UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-61166-CIV-SEITZ/O'SULLIVAN

POINT BLANK SOLUTIONS, INC., *et al.*,

        Plaintiffs,

v.

TOYOBO AMERICA, INC., and
TOYOBO CO., LTD.,

        Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS

THIS MATTER is before the Court on the Defendants' Motion to Dismiss Counts I-IV of Point Blank's First Amended Complaint [DE-63] and Defendants' Request for Hearing on its Motion to Dismiss [DE-64]. This case arises from the manufacture and sale of allegedly defective ballistic material which Plaintiffs used to make bulletproof vests. Plaintiffs' five count First Amended Complaint alleges claims for: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) false, misleading, and deceptive advertising and sales in violation of Florida Statute, § 817.41; (4) fraudulent inducement; and (5) deceptive and unfair trade practices in violation of Florida Statute, § 501.204. Defendants move to dismiss Counts I-IV. Because Plaintiffs have adequately pled their claims and the claims are not barred by the economic loss rule, Defendants' Motion to Dismiss is denied.

### I. Facts Alleged in Complaint

Plaintiffs manufactured and sold ballistic-resistant vests, also known as bulletproof vests. (Compl.[1] ¶¶1, 10.) From 1999 to 2005, Plaintiffs manufactured bulletproof vests containing a

---

[1]Compl. refers to the First Amended Complaint, DE-59.

material known as Zylon. (Compl. ¶10.) Defendant Toyobo Co, Ltd. (Toyobo Japan) manufactures Zylon. (Compl. ¶11.) Representatives of Toyobo Japan regularly met with and corresponded with Plaintiffs to research, promote, and sell Zylon. (Compl. ¶11.) Defendant Toyobo America, Inc. (Toyobo America) was also involved in the research, sales, and promotion of Zylon. (Compl. ¶¶12, 14.) Toyobo Japan and Toyobo America (jointly referred to as Toyobo) acted as alter-egos of one another. (Compl. ¶14.)

Toyobo selected and kept strict control over the entire supply chain and price of Zylon, including choosing who could weave Zylon and to whom the weavers could supply the fabric. (Compl. ¶¶18-19.) On February 17, 1999, Plaintiffs and Toyobo entered into an agreement permitting Plaintiffs to obtain Zylon and setting out the markets in which Plaintiffs could sell products using Zylon. (Compl. ¶¶20, 25 & Ex. 1.) In June 2004 Toyobo Japan and Plaintiffs entered into another agreement relating to the testing and use of an improved version of Zylon. (Compl. ¶26.)

From 1998 until August 2005, Toyobo had numerous direct contacts and meetings with Plaintiffs in Florida where Toyobo made numerous representations to Plaintiffs concerning the performance, attributes, and qualities of Zylon. (Compl. ¶28.) The specific representations made by Defendants to Plaintiffs are set in paragraph 31 of the First Amended Complaint and include statements such as Zylon is "twice as strong as Kevlar." Additionally, Toyobo made numerous misleading statements in advertisements and marketing materials disseminated to the Florida-based body-armor industry. (Compl. ¶¶45 & 47.) The specific misleading statements made in the advertising materials are set out in paragraph 45 of the First Amended Complaint. Plaintiffs relied on Toyobo's representations and advertising in deciding to purchase and deciding to

continue to purchase Zylon. (Compl. ¶28.) Toyobo knew or should have known that its statements in the advertising and marketing materials were false. (Compl. ¶46.) Paragraph 46 of the First Amended Complaint sets out in detail the reasons why Toyobo knew or should have known that their statements were false.

After concerns about Zylon's integrity came to light, Toyobo engaged in a series of actions designed to obscure the problems with Zylon and continue having Zylon fabric produced and supplied to Plaintiffs and others. (Compl. ¶53.) Further, when another bulletproof vest manufacturer's vests failed, Toyobo Japan engaged in actions designed to deceive Plaintiffs into believing that the vest failures were a manufacturer's problem and not a Zylon problem. (Compl. ¶71.) These actions included publishing false statements about the failures and what caused them. (Compl. ¶71.) Toyobo also represented to Plaintiffs that it would modify its process to minimize Zylon strength loss. (Compl. ¶72.) However, the modified Zylon also had integrity issues which Toyobo hid in an effort to keep vest manufacturers from purchasing other ballistic material. (Compl. ¶73.) Toyobo made the representations about the modified Zylon to Plaintiffs with the intent to induce Plaintiffs to continue buying Zylon. (Compl. ¶76.) Plaintiffs did rely on the representations in deciding to continue purchasing Zylon. (Compl. ¶79.) These representations predated two large Zylon purchases by Plaintiff in February and December 2004. (Compl. ¶78.) The modified Zylon was never made available to Plaintiffs or other manufacturers. (Compl. ¶73.)

On August 24, 2005, the National Institute of Justice (NIJ) released a report detailing the failure of Zylon in ballistic resistant vests. (Compl. ¶2.) As a result, all Zylon-containing vests in the United States were decertified by the NIJ and use of Zylon in ballistic vests was banned.

(Compl. ¶2.) Plaintiffs seek damages for the costs of their current inventory of defective Zylon, the costs of stopped work in process and finished goods, the costs to recall and replace defective Zylon vests, the costs related to potential warranty claims for Zylon vests, and punitive damages. (Compl. ¶¶22 -23.)

## II. Motion to Dismiss Standard

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter to . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. Accordingly, "unwarranted deductions of . . . legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. Discussion

Defendants move to dismiss Plaintiffs' claims for (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) false, misleading, and deceptive advertising and sales in violation of Florida Statute, § 817.41; and (4) fraudulent inducement. Defendants do not move to dismiss Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act, Count V of the First Amended Complaint. Defendants move to dismiss Plaintiffs' warranty

claims because of a lack of privity, Plaintiffs' fraudulent inducement claim based on the economic loss rule, and Plaintiffs' fraudulent inducement and false, misleading and deceptive advertising claims based on a failure to adequately plead justifiable reliance. Because the Court must presume that the facts pled in the complaint are true, Defendants' motion is denied in its entirety.

### A. Plaintiffs Have Adequately Pled Privity for Purposes of a Motion to Dismiss

Defendants argue that, because Plaintiffs never purchased Zylon directly from Defendants, there is no contractual privity between the parties and, therefore, Plaintiffs' warranty claims, Counts I and II, must be dismissed. Defendants argue that Plaintiffs have neither direct privity with Defendants nor privity based on direct contacts. In response, Plaintiffs argue that there are contracts between the parties and that the parties had substantial and ongoing contacts sufficient to form privity.

Plaintiffs have pled the existence of contracts between the parties and Plaintiffs have attached a copy of one of the contracts as an exhibit to the First Amended Complaint. While the contract is not for the direct purchase of Zylon from Defendants, it does deal with Plaintiffs' ability to purchase Zylon and market products made using Zylon. Whether this contract, or any of the others referenced in the First Amended Complaint, would give rise to an express warranty or an implied warranty is not an appropriate determination for a motion to dismiss. Thus, Plaintiffs have sufficiently alleged privity at this stage of the litigation.

Furthermore, Plaintiffs have also sufficiently pled direct contacts to establish privity at this stage of the proceedings. As this Court has previously stated:

> While generally privity of contract is required to sustain a breach of warranty claim, *see*

> *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990), actual privity is not always necessary, *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of America, Inc.*, 444 So. 2d 1068, 1072 (Fla. 3d DCA 1984). Despite the lack of a direct purchase from the manufacturer, Florida courts have found that the privity requirement was satisfied where the manufacturer's representative had direct contacts with the purchaser. *Id.* (holding the privity requirement satisfied where manufacturer made direct representations to the ultimate purchaser about equipment that was purchased from a third-party distributor); *see also New Nautical Coatings, Inc. v. Scoggin*, 731 So. 2d 145, 147 (Fla. 4th DCA 1999) (affirming a breach of warranty claim against a manufacturer when the manufacturer's representative was heavily involved in the transaction but a third-party shop provided the services to the plaintiff); *MacMorris v. Wyeth, Inc.*, 2005 WL 1528626 (M.D. Fla. June 27, 2005) (holding that under Florida law certain circumstances satisfy the privity requirement even in the absence of a direct purchase from the manufacturer). Further, Official Comment 2 to § 2-3 13 of the Uniform Commercial Code (UCC), which addresses express warranties, states "[allthough this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." Fla. Stat. 5 672.313, Official Cmt. 2.

*Carnival Corp. v. Rolls-Royce plc*, 2009 WL 3861450, *3 (S.D. Fla. Nov. 17, 2009). Plaintiffs have pled significant direct contacts with Defendants wherein Defendants made numerous representations about Zylon.

Defendants argue that the Florida Supreme Court would not follow *Cedars of Lebanon* and that the facts of the *Carnival* and *Cedars of Lebanon* cases are different from the instant case and thus the reasoning of those cases should not apply. First, the case relied upon by Defendants to support its argument that the Florida Supreme Court would not follow *Cedars of Lebanon* is inapplicable. That case, *Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condo. Ass'n, Inc.*, 581 So. 2d 1301, 1303 (Fla. 1991), dealt with the definition of privity under a particular statute of limitations. Second, Defendants claim that the facts of the instant case differ from those in *Carnival* and *Cedars of Lebanon* is not apparent on the face of the First Amended

6

Complaint. Defendants argue that the facts differ between this case and the *Carnival* and *Cedars of Lebanon* cases because in those cases the items passed from the manufacturers to third parties and then to the plaintiffs virtually unchanged. Defendants argue that the weaving process substantially changes Zylon fiber and, therefore, the reasoning of *Carnival* and *Cedars of Lebanon* should not apply in this case. However, whether Zylon is substantially changed through the weaving process is not pled in the First Amended Complaint. Therefore, this is an issue better suited for summary judgment or trial. Consequently, Defendants' Motion to Dismiss Counts I and II is denied.

### B. The Economic Loss Rule Does Not Bar Plaintiffs' Fraudulent Inducement Claim

Neither side disputes that Florida recognizes that fraudulent inducement claims fall outside the scope of the economic loss rule. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 65 So. 2d 1238, 1239 (Fla. 1996) (holding that the economic loss rule does not bar a cause of action based upon torts independent of the contractual breach, such as fraudulent inducement, even though there exists a breach of contract action). However, Defendants argue that Plaintiffs' fraudulent inducement claim is interwoven with Plaintiffs' warranty claims and is therefore barred under the economic loss rule. Despite Defendants' arguments, the factual basis for Plaintiffs' warranty claims is different than the factual basis for its fraudulent inducement claim. *See id.* (stating that "[f]raudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract."). Plaintiffs' warranty claims are based on specific statements about Zylon's attributes and performance, such as Zylon is "twice as strong as Kevlar." Whereas Plaintiffs' fraudulent inducement claim is based on statements about the problems and failures of Zylon, Defendants' attempts to doctor test data regarding Zylon's

7

performance, and Defendants' statements about the promised modified Zylon. Thus, Plaintiffs' fraudulent inducement claim is not based on the same facts as Plaintiffs' warranty claims. Consequently, the claims are not interwoven and the fraudulent inducement claim is not barred by the economic loss rule.

### C. Plaintiffs Have Adequately Pled Justifiable Reliance

Finally, Defendants move to dismiss Plaintiffs' fraudulent inducement and false, misleading, and deceptive advertising claims because Plaintiffs have not adequately pled justifiable reliance, an element of both claims. Defendants further argue that any reliance is implausible. However, for purposes of a motion to dismiss, the Court must accept all well-pleaded allegations as true and view the facts in the light most favorable to Plaintiffs. Plaintiffs have pled justifiable reliance. They have pled the who, what, when, where, and how of the fraudulent inducement and false, misleading, and deceptive advertising claims and they have pled that they relied on Defendants' representations in purchasing and continuing to purchase Zylon. Whether that reliance was truly justified is a matter for summary judgment or trial, not a motion to dismiss. Consequently, Defendants' Motion to Dismiss should be denied.

Accordingly, it is

ORDERED that:

1. Defendants' Motion to Dismiss Counts I-IV of Point Blank's First Amended Complaint [DE-63] is DENIED.

2. Defendants' Request for Hearing on its Motion to Dismiss [DE-64] is DENIED.

DONE AND ORDERED in Miami, Florida, this 3rd day of November, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record