UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-61166-CIV-SEITZ/GOODMAN

POINT BLANK SOLUTIONS, INC. and
POINT BLANK BODY ARMOR, INC.,

        Plaintiffs,

v.

TOYOBO AMERICA, INC., and
TOYOBO CO., LTD.,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment [DE-166]. This case arises from the manufacture and sale of allegedly defective fiber used to make ballistic fabric. Defendants manufactured, marketed, and sold the fiber from which the ballistic fabric was woven. Plaintiffs purchased the ballistic fabric made from the fiber for use in body armor that Plaintiffs manufactured. Plaintiffs' five count Amended Complaint alleges claims for: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) false, misleading, and deceptive advertising and sales in violation of Florida Statute, § 817.41; (4) fraudulent inducement; and (5) deceptive and unfair trade practices in violation of Florida Statute, § 501.204 (FDUTPA). Defendants move for summary judgment on all claims. Because there was no privity between Plaintiffs and Defendants, Defendants are entitled to summary judgment on Plaintiffs' warranty claims, Counts I and II. Because Plaintiffs' FDUTPA claim is time barred, Count V is dismissed. The Motion is denied as to Counts III and IV.

I. **Statement of Material Facts**

Defendants[1] manufacture, market, and sell a synthetic fiber known as PBO fiber, under the trade name Zylon. Defendants do not weave Zylon into fabric; that is done by independent weavers. Woven Zylon fabric was used in the manufacture of ballistic-resistant vests, also known as bullet-proof vests, until approximately August 24, 2005. On that date, the National Institute of Justice (NIJ)[2] issued its Third Status Report to the Attorney General on Body Armor Safety Initiative Testing and Activities (Third Status Report), which stated that all Zylon containing body armor would no longer be compliant with NIJ requirements, unless their manufacturers provided satisfactory evidence that the armor would maintain its ballistic performance over the declared warranty period. (Ex. 20 to Defendants' Statement of Undisputed Material Facts at 27.[3]) The Third Status Report created new requirements for all body armor manufacturers but manufacturers of Zylon-based armor had to satisfy additional requirements. (Defendants' Ex. 20 at 27.) Thereafter, all use of Zylon in ballistic-resistant vests stopped.

Plaintiffs manufacture and sell ballistic-resistant vests. From 1999 until 2005, Plaintiffs used Zylon in the manufacture of some of their vests. It appears that Plaintiffs and Defendants' relationship began in February 1999 with a meeting at Plaintiffs' Florida facility. At the meeting, the parties discussed the Plaintiffs' use of Zylon in the manufacture of their vests and the markets

---

[1]From the record, it is not entirely clear what Defendant Toyobo America, Inc. does. However, for purposes of this motion the distinction between the two Defendants is not really relevant. Therefore, the Court will refer to them jointly as Defendants.

[2]The NIJ is the research, development, and evaluation agency of the U.S. Department of Justice.

[3]The Court will refer to Defendants' Exhibits to their Statement of Undisputed Material Facts as "Defendants' Ex. #."

in which Plaintiffs could sell their Zylon-containing vests. (Ex. 2 to Plaintiffs' Statement of Disputed Material Facts.[4]) Plaintiffs memorialized the minutes of the meeting in a letter or email sent to Defendants. (Plaintiffs' Ex. 2.) The letter or email indicated that the parties intended to enter into a "signed agreement." (*Id.*) In response, Defendants sent an email to Plaintiffs correcting some of the minutes. (*Id.*) The parties never entered into a "signed agreement" regarding Plaintiffs' purchase of Zylon, use of Zylon, or marketing of Zylon-containing products.[5]

During the course of the parties' relationship, Defendants made various representations to Plaintiffs about the characteristics of Zylon fiber, including:[6]

a) Statements in a July 19, 2001 letter that "Zylon fiber is a superior material for body armor" and "we estimate less than 5% strength loss for 10 years at ambient temperature and humidity." (Plaintiffs' Ex. 10.)

b) Statements in a December 12, 2003 letter that "Zylon is one of the highest performing fibers in the world and is almost universally acknowledged to be capable of producing the best bullet-resistant fabric in the world" and "Zylon itself is not a defective product." (Plaintiffs' Ex. 10.)

---

[4]The Court will refer to exhibits to Plaintiffs' Statement of Disputed Material Facts as "Plaintiffs' Ex #."

[5]The only signed agreement between the parties is a May 25, 2004 non-disclosure agreement, which involved a new and improved Zylon, not the Zylon at issue in this case. (Defendants' Ex. 27; Plaintiffs' Ex. 5.)

[6]While Plaintiffs have submitted evidence of additional statements made by Defendants about Zylon's characteristics, Plaintiffs have not submitted any evidence that those statements were made to Plaintiffs.

    c)    A December 11, (no year) press release containing the same language as the December 12, 2003 letter to Plaintiffs. (Plaintiffs' Ex. 10.)

    d)    Zylon is twice the strength of Kevlar.[7] (Plaintiffs' Ex. 14 at 50.)

    e)    Defendants "firmly stand[] behind Zylon and believe[] that it is a superior fiber for personal body armor manufacturers to use in the production of their vests. Zylon is the strongest, high-performance fiber for ballistic applications in the world, permits the making of lighter, more comfortable vests, and is far stronger than [Kevlar] and steel fiber." (Plaintiffs' Ex. 22 at 15-16.)

In addition to these statements, Defendants explicitly stated to Plaintiffs that they make "no warranty and assume[] no liability whatsoever in connection with any use of Zylon fiber. Users determine for themselves the suitability for their intended use of the fiber." (Defendants' Ex. 6 at 2.)

In contrast to the statements touting the benefits of Zylon, as early as September 2001, Defendants began releasing information to body armor manufacturers that indicated that under certain heat and humidity conditions Zylon was subject to degradation. (Defendants' Ex. 10 at 8; Defendants' Ex. 5 at 3; Defendants' Ex. 2 at 3; Plaintiffs' Ex. 1 at 6.) Despite the released data about Zylon's potential to degrade under certain conditions, Plaintiffs continued to purchase Zylon until March 24, 2005. (Defendants' Ex. 24.)

However, Defendants did not release internal data to Plaintiffs that indicated that Zylon degraded almost 10% in 100 days, that Zylon's strength falls "at a higher than expected speed," and that Zylon was "largely inferior to [Kevlar] fiber." (Plaintiffs' Ex. 9.) This information was

---

[7]Kevlar is another material used in the manufacture of ballistic-resistant body armor.

known to Defendants in 2001. (*Id.*)

Plaintiffs purchased Zylon fabric, not fiber, from third-party weavers. (Defendants' Ex. 1.) The weaving process changes the fiber (Defendants' Ex. 8 at 13-14; Defendants' Ex. 10 at 8; Plaintiffs' Ex. 11.) According to Steven Young, an engineer with knowledge of the weaving process, the weaving process weakens the tensile strength of a fiber by 10-20%. (Defendants' Ex. 8 at 14.) However, Young also testified when asked about the scouring process, which takes place during the weaving process, that anything you do to the product "could possibly change it or enhance it." (Defendants' Ex. 8 at 21.)

Plaintiffs never purchased Zylon fiber or fabric directly from Defendants. (Defendants' Ex. 1.) However, Defendants chose the third party weavers who would receive Zylon fiber and would be allowed to weave Zylon fabric. (Plaintiffs' Ex. 1 at 2-5; Plaintiffs' Ex. 2 at 1.) Defendants also controlled how much Zylon Plaintiffs received, when Plaintiffs could obtain Zylon, and the markets in which Plaintiffs and others could sell their Zylon-containing products. (Plaintiffs' Ex. 2 at 2-5, 13; Plaintiffs' Ex. 22 at 9.)

In 2003, after a law enforcement officer was shot while wearing a bullet-resistant vest containing Zylon, the NIJ began its investigation into Zylon-containing body armor. The investigation culminated in the issuance of the Third Status Report, which effectively ended the use of Zylon in body armor. (Defendants' Ex. 20; Plaintiffs' Ex. 17 at 3.) As a result, Plaintiffs were left with millions of dollars in inventory of Zylon fabric and also incurred costs replacing their customers' Zylon containing vests with non-Zylon containing vests. On July 31, 2009, Plaintiffs brought this suit seeking to recover its losses relating to Zylon.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Analysis

Defendants move for summary judgment on all of Plaintiffs' claims because Defendants

assert that Plaintiffs cannot establish that Defendants caused Plaintiffs' damages. Defendants also move for summary judgment on Plaintiffs' warranty claims based on a lack of privity between Plaintiffs and Defendants. Finally, Defendants maintain that they are entitled to summary judgment on Plaintiffs' statutory claims because the claims are time barred.

### A. Defendants Are Entitled to Summary Judgment on Plaintiffs' Warranty Claims

Defendants argue that they are entitled to summary judgment on Plaintiffs' warranty claims because there is no privity of contract between Defendants and Plaintiffs for the purchase of Zylon. Plaintiffs argue that privity of contract exists because there was an agreement regarding Zylon between the parties. Plaintiffs also rely on this Court's ruling in *Carnival Corp. v. Rolls-Royce PLC*, 2009 WL 3861450 (S.D. Fla. Nov. 17, 2009), and the cases cited therein, for the proposition that when there is no actual privity of contract the privity requirement can be satisfied when the manufacturer's representative had direct contacts with the purchaser.

In Florida, privity of contract is "required in order to recover damages from the seller of a product for breach of express or implied warranties," *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990), because, in the sales context, warranties are strictly contractual in nature, *Brown v. Hall.*, 221 So. 2d 454, 458 (Fla. 2d DCA 1969). In limited circumstances, however, Florida courts have found that the privity requirement was met without an actual contract between the manufacturer and the purchaser when the manufacturer's representative had direct contacts with the purchaser which induced the purchaser to buy the product. *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of America, Inc.*, 444 So. 2d 1068, 1072 (Fla. 3d DCA 1984). This Court applied this principle in *Carnival*, where Rolls-Royce made significant representations to Carnival about engines manufactured by Rolls-Royce which

induced Carnival to purchase the engines through the third-party shipbuilder for use on Carnival's ship. However, in *Cedars of Lebanon* and *Carnival* the representations made by the manufacturers directly to the buyers were about the exact products purchased by the buyers. The middleman in the transactions did not alter the purchased product in any way.

### i. Plaintiffs Cannot Establish Actual Privity

In this case, Plaintiffs and Defendants do not have actual contractual privity for the purchase of Zylon. First, it is undisputed that Plaintiffs never purchased any form of Zylon from Defendants. While Plaintiffs argue that the weavers were Defendants' agents, Plaintiffs did not plead this in their complaint and have not presented any evidence of an actual agency relationship. Second, the email agreement relied upon by Plaintiffs is not a contract for the purchase of Zylon and does not contain any express warranties. While there was testimony that the email exchange represented the parties' agreement, the email exchange referred to "receipt of our signed agreement" and, based on the exchange, the parties were not 100% in agreement on all terms. Furthermore, the email exchange does not even mention the purchase of Zylon; it discusses Plaintiffs' marketing and selling of Zylon products to third parties. Third, the second agreement on which Plaintiffs rely, the 2004 Non-Disclosure Agreement, did not relate to the type of Zylon at issue in this case and did not involve the purchase of Zylon.

Plaintiffs rely on two non-binding cases to argue that contractual privity is established if the parties have any type of contract relating to the product. Plaintiffs argue that *McAteer v. Black & Decker (U.S.), Inc.*, 1999 WL 33836701 (M.D. Fla. Sept. 13, 1999) and *T.W.M. v. American Medical Systems, Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995), stand for the broad proposition that as long as the parties have a contract that relates to the product sold, there is

contractual privity. But in fact, in *T.W.M.* the court explicitly stated that a "plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant." 886 F. Supp. at 844. Clearly, the *T.W.M.* court found that a direct purchase by the plaintiff from the defendant was necessary for privity, not just a contract relating to the item purchased. *McAteer* quoted the same language from *T.W.M.* to note the necessity of a direct purchase from the defendant. Thus, these cases do not stand for the broad proposition asserted by Plaintiffs. Therefore, Plaintiffs' reliance on these cases is misplaced. Consequently, there is no actual privity between Plaintiffs and Defendants.

### ii. Direct Contacts Do Not Establish Privity Between the Parties

Plaintiffs and Defendants also do not have contractual privity based on the direct contacts between the parties. The record before the Court on this motion is clear that Defendants made representations about Zylon fiber but Plaintiffs purchased Zylon fabric. The record also indicates that the characteristics of Zylon fiber are changed when it is woven into fabric.[8] Thus, unlike *Cedars of Lebanon* and *Carnival*, Plaintiffs did not purchase the same thing about which Defendants made representations to Plaintiffs. The item that Defendants sold to the weavers was different than the item Plaintiffs purchased from the weavers. Therefore, in this case there is a significant factual difference from the cases where courts have found privity through direct contacts. In *Cedars of Lebanon* and *Carnival* the item purchased passed unchanged from the manufacturer to the middleman-seller to the final purchaser. Here, neither party disputes that the Zylon fiber was changed by the weaving process and that Plaintiffs purchased Zylon fabric, not

---

[8]Defendants claim that the weaving process weakens the fiber, while Plaintiffs claim that the weaving process could enhance the fiber. Regardless of which of these assertions is true, both assertions establish that the fiber is changed in the weaving process.

9

fiber. Therefore, Plaintiffs cannot establish privity through direct contacts. Because privity is necessary for a warranty claim and Plaintiffs cannot establish privity of contract with Defendants, summary judgment on these claims is granted in favor of Defendants.

### B. Plaintiffs Can Establish Causation for their Statutory and Fraud Claims

Defendants move to dismiss all of Plaintiffs' claims because Plaintiffs cannot establish that Defendants' actions caused Plaintiffs' damages. Defendants assert that all of Plaintiffs' damages were solely caused by the NIJ's decision to impose new certification standards for bullet- resistant vests containing Zylon. Defendants argue that they had no role in the NIJ's decision and therefore did not cause Plaintiffs' damages. Defendants, however, confuse incurring damages with discovery of the damages. For purposes of Plaintiffs' fraud, FDUTPA, and false, misleading, and deceptive advertising claims, Plaintiffs incurred damages, or suffered injury, when they purchased Zylon that they would not have otherwise purchased if Defendants had not made false, misleading, or deceptive statements to Plaintiffs. Thus, while Plaintiffs may not have discovered their damages until the NIJ's actions, Plaintiffs suffered damages as a result of purchasing the Zylon. Consequently, assuming that the other elements of Plaintiffs' claims are met, Plaintiffs can establish causation.

### C. Plaintiffs' Statutory Claims

Defendants seek summary judgment on Plaintiffs' statutory claims for false, misleading, and deceptive advertising under Florida Statute, § 817.41 and for violation of FDUTPA based on the applicable statute of limitations. Defendants argue, and Plaintiffs do not dispute, that all of Defendants' actions that form the basis of Plaintiffs' FDUTPA and false advertising claims occurred before July 31, 2004. Neither side disputes that Florida Statute, § 95.11(3)(f) sets forth

the applicable statute of limitations for Plaintiffs' statutory claims – 4 years. Defendants argue that this four years is not extended by the delayed discovery doctrine[9] as to Plaintiffs' statutory claims. Because all of Defendants' actions on which Plaintiffs' two statutory claims are based occurred more than 5 years[10] before Plaintiffs filed this action, on July 31, 2009, Defendants argue these claims are barred by the statute of limitations and they are entitled to summary judgment.

### i. Plaintiffs' FDUTPA Claim is Time Barred

It is clear that in Florida the delayed discovery doctrine does not apply to causes of action under FDUTPA. *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equipment Co.*, 793 So. 2d 1127, 1128 (Fla. 5th DCA 2001). Plaintiffs argue that their FDUTPA claim did not accrue until the last element of the cause of action had occurred, in this case the suffering of damages, which occurred in 2005 when Plaintiffs recalled some Zylon containing vests and when the NIJ decertified Zylon. However, Plaintiffs appear to conflate suffering damages with discovering that they had suffered damages. Under FDUTPA, Plaintiffs suffered damages when they purchased something that was not what they were led to believe they were purchasing. *See Rollins v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (stating that the measure of damages under FDUTPA is the difference in market value of the product delivered and the market value of the product contracted for by the parties). Therefore, Plaintiffs' FDUTPA claim accrued when

---

[9]The delayed discovery doctrine provides that, for purposes of the statute of limitations, a cause of action does not accrue until the plaintiff either knows or reasonably should know of the conduct giving rise to the cause of action. *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000).

[10]Apparently, the parties agreed to toll the statute of limitations for one year.

11

they purchased the Zylon, not when they discovered that the Zylon was unusable. *See South Motor Co. of Dade County v. Doktorczyk*, 957 So. 2d 1215, 1218 (Fla. 3d DCA 2007) (FDUTPA cause of action accrued on date of purchase, not when amount of damages became clear). Accordingly, unless some other theory tolls or otherwise nullifies the statute of limitations, Plaintiffs' FDUTPA claim is time barred.

Plaintiffs argue that Defendants are equitably estopped from asserting a statute of limitations defense because of Defendants' fraudulent concealment of the problems with Zylon. Equitable estoppel prevents a party from asserting the statute of limitations as a defense when "his conduct has induced another into forbearing suit within the applicable limitations period." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1079 (Fla. 2001). Thus, equitable estoppel "'presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct.'" *Ryan v. Lobo De Gonzalez*, 841 So. 2d 510, 518 (Fla. 4th DCA 2003) (quoting *Bell v. Fowler*, 99 F.3d 262, 266 n. 2 (8th Cir.1996)). Here, however, Plaintiffs did not, and could not, forbear bringing suit because they did not know they had a claim to bring. Plaintiffs admit this in its opposition to Defendants' motion for summary judgment by arguing that Defendants' actions prevented them from "discovering its causes of action." Thus, Plaintiffs admit that they did not know they had claims to bring. Consequently, equitable estoppel does not apply in this case. Therefore, Plaintiffs' FDUTPA claim is time barred.

### ii. Plaintiffs' Deceptive Advertising Claim is Not Time Barred

Defendants make the same statute of limitations arguments in favor of summary judgment on Plaintiffs' false, misleading, and deceptive advertising claim as they made to

support summary judgment on Plaintiffs' FDUTPA claim. Plaintiffs argue, however, that the case law barring application of the delayed discovery doctrine to FDUTPA claims is inapplicable to claims under Florida Statute, § 817.41.

The *Yusuf* case held that the delayed discovery doctrine did not apply to FDUTPA claims because the absence of express statutory language providing for the application of the delayed discovery doctrine was clear evidence that the legislature did not intend for it to apply. 793 So. 2d at 1128. However, Florida Statutes, § 95.031(2)(a) expressly makes the delayed discovery doctrine applicable to claims based on fraud, stating:

> An action founded upon fraud under s. 95.11(3), including constructive fraud, must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence . . .

Florida courts have found that a claim under § 817.41 is a "particularized form of fraud." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006); *see also Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So. 2d 1367, 1370 (Fla. 4th DCA 1981) (stating that a party seeking to recover under § 817.41 must prove all of the elements of common law fraud in the inducement). Thus, based on the reasoning of *Yusuf* and the language of § 95.031(2)(a), Florida Statutes, the delayed discovery doctrine does apply to Plaintiffs' claim under § 817.41 for false, misleading, and deceptive advertising. Thus, Plaintiffs' claim under § 817.41 is not time barred because the claim did not accrue until Plaintiffs learned that there were problems with Zylon, which Plaintiffs allege occurred in 2005, when the NIJ's Third Status Report was issued. Consequently, Defendants' motion for summary judgment on Plaintiffs' false advertising claim is denied.

Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment [DE-166] is GRANTED in part and DENIED in part:

1. Counts I, II, and V of the Amended Complaint are dismissed with prejudice.

2. The Motion is DENIED as to Counts III and IV.

DONE AND ORDERED in Miami, Florida, this 13th day of May, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record